## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| DMH INGREDIENTS, INC., an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 08 CV 4804 |
| LATITUDE, LTD., a Delaware corporation, | ) ) ) | Judge Holderman |
| Defendant. | ) ) | Magistrate Judge Mason |

### *FIRST AMENDED COMPLAINT*

Plaintiff DMH Ingredients, Inc. ("DMH"), by and through its attorneys, Daniel S. Kaplan and Marcia G. Cotler, of Kaplan & Greenswag LLC, for its First Amended Complaint against defendant Latitude, Ltd. ("Latitude") states as follows:

### PARTIES

1.     Plaintiff, DMH INGREDIENTS, INC. ("DMH"), a provider of ingredients for food and pharmaceutical industries, is a corporation duly incorporated in the State of Illinois with its principal place of business located at 1228 American Way, Libertyville, Illinois.

2.     Defendant, LATITUDE, LTD. ("LATITUDE"), a provider of ingredients for food industries, is a Delaware Corporation with its principal place of business located at 37 West Shore Road, Huntington, New York, 11743.

### JURISDICTION AND VENUE

3.     Jurisdiction is proper pursuant to 28 USC Section 1332(a), based upon diversity of citizenship of the parties.

4.     The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.     LATITUDE has continuous and systematic contacts with the State of Illinois,

having placed its product in the stream of commerce with the expectation that said products would be sold and/or utilized in this forum.

6.     Venue is proper pursuant to 28 USC Section 1391(a) as a substantial part of the events or omissions giving rise to this claim occurred in this forum district.

## FACTUAL BACKGROUND

7.     At all relevant times, LATITUDE had knowledge that the products it sold to DMH would be resold by DMH to manufacturers and/or other end users for inclusion in consumer products intended for human consumption.

8.     On or about March 3, 2005, DMH ordered 5,000 kilograms of ascorbic acid from LATITUDE. DMH's purchase order 15286 indicates that a certificate of analysis was required on all orders. *DMH purchase order 15286 is attached as Exhibit "A."*

9.     On or about March 7, 2005, LATITUDE provided certificates of analysis for four batches of ascorbic acid; batch numbers 04042028, 04042046, 04042059 and 04065274. *Copies of these certificates are attached as Exhibit "B."*

10.     DMH relied upon Latitude's Certificates of Analysis with respect to the identity and quality of the goods.

11.     On or about March 7, 2005, LATITUDE shipped to DMH 5,000 kilograms of ascorbic acid pursuant to invoice 1166. *A copy of LATITUDE's invoice number 1166 is attached as Exhibit "C."*

12.     On or about April 13, 2005, DMH shipped to its customer, Golden Gate Beverages Company, Inc. an order which included 330.69 pounds of what was believed by DMH based upon LATITUDE's certificates and representations to be ascorbic acid. DMH invoice number 18677 identifies the ascorbic acid as coming from Lot Number 4042059. *A copy of DMH*

*invoice number 18677 is attached as Exhibit "D."*

13.    DMH's "sold lot number report" also confirms that the 330.69 pounds of ascorbic acid sold to Golden Gate Beverages Company, Inc. pursuant to invoice number 18677 came from lot 4042059. *DMH's "sold lot number report" is attached as Exhibit "E."*

14.    Golden Gate Beverages Company, Inc. used the acid from lot number 4042059 in the course of its normal business and incorporated the acid into carbonated beverages that were then canned, sold and shipped to one its customers.  Golden Gates Beverages Company, Inc.'s customer performed quality assurance testing on the beverages only to discover that the beverages contained erythorbic acid and not ascorbic acid. The customer rejected the entire order deeming it non-conforming and unfit.

15.    On or about December 2005, DMH first learned from Golden Gate Beverages Company, Inc. of the alleged problem with the acid.  Prior to being notified by Golden Gate Beverages Company, Inc. of the alleged problem, DMH lacked knowledge of the true nature of the product represented by LATITUDE to be ascorbic acid.  DMH relied upon LATITUDE'S assurances, certificates of analysis and labeling that each stated the product was in fact ascorbic acid.

16.    Upon first learning of the alleged problem and receiving laboratory test results performed at the request of Golden Gate Beverages Company, Inc. and taken from samples of Lot 4042059 which confirmed that the product contained erythorbic acid with no ascorbic acid detected, DMH promptly contacted LATITUDE to notify it of the alleged problem with Lot 4042059.

17.    Soon thereafter, DMH was able to retrieve from one of DMH's other customers 100 KG of unused product which had come from Lot 4042059.  DMH sent samples of the

retrieved product for laboratory testing which confirmed the presence of erythorbic acid.

18.     At or around this same time, DMH provided LATITUDE with a portion of the retrieved product so that LATITUDE could perform its own independent testing on the product. DMH further provided LATITUDE, upon LATITUDE's request, with several cans of the soda containing the erythorbic acid from Lot 4042059.

19.     Nearly two years later, on October 19, 2007, Golden Gate Beverages Company, Inc. filed a lawsuit against DMH in the U.S. District Court for the Eastern District of California ("California Action") alleging that the product purported to be ascorbic acid was in fact erythorbic acid and seeking damages as a result thereof.  *A copy of the Complaint in the California action is attached hereto as Exhibit "F".*

20.     DMH filed a Third Party Complaint against LATITUDE in the California Action seeking contribution, indemnification, damages for breaches of contract and warranties, but Latitude argued that the Court lacked personal jurisdiction over it and the third party complaint against LATITUDE was ultimately dismissed for lack of personal jurisdiction.

21.     The case was sent by the Court to mandatory court mediation at which time DMH's counsel sent a letter to LATITUDE's counsel asking LATITUDE to participate in the mediation so that LATITUDE might mitigate its damages.  The letter expressly put LATITUDE on notice that DMH would seek to recover from LATITUDE any amounts paid by DMH in settlement of the claim by Golden Gate Beverages Company, Inc. *A copy of the July 24, 2008 correspondence from DMH's counsel is attached hereto as Exhibit "G".*

22.     On July 25, 2008, the letter from DMH's counsel was forwarded to the principals of LATITUDE.  *A copy of the July 25, 2008 correspondence is attached hereto as Exhibit "H".*

23.     LATITUDE refused to participate in the mediation and instead told DMH that

LATITUDE intended to "disappear".

24.    The California Action was settled by way of mediation with Golden Gate Beverages Company, Inc. being paid a settlement sum of $225,000.

## COUNT I
## BREACH OF CONTRACT

25.    DMH hereby incorporates the allegations of Paragraphs 1-24 as if fully stated herein.

26.    DMH entered into a contract with LATITUDE, as evidenced by purchase order number 15286, the kosher certifications and certificates of analysis dated March 4, 2005 and transfer of lots of ascorbic acid.

27.    LATITUDE breached the express terms of the contract by failing to provide DMH with ascorbic acid as specified in the contract, the certificates of analysis and the label on boxes provided by LATITUDE to DMH.

28.    DMH relied upon LATITUDE's express representations that the product being sold and supplied to DMH was in fact ascorbic acid.

29.    As a direct result of LATITUDE's breach of contract in falsely representing its product as being ascorbic acid, and delivering to DMH an alternate substance, DMH has been damaged.  DMH in turn sold the product to its customer Golden Gate Beverages Company, Inc. who initiated a lawsuit against DMH for supplying Golden Gate with erythorbic acid rather than ascorbic acid.

30.    The lawsuit filed by Golden Gate was ultimately settled with DMH paying Golden Gate Beverages Company, Inc. a settlement sum of $225,000.  As a result, DMH has suffered damages as a direct result of LATITUDE's breach of contract in the sum of $225,000.

WHEREFORE, DMH Ingredients, Inc. prays for judgment against LATITUDE, Ltd. in

the amount of $225,000, plus interest and costs, and for such other and further relief as the Court may deem proper.

## COUNT II
## BREACH OF EXPRESS WARRANTY

31.    DMH incorporates and restates herein all allegations contained herein in paragraphs 1 through 30 above.

32.    At all times defendant, LATITUDE, represented and warranted to plaintiff, DMH, that the ascorbic acid complied with the certificates of analysis and labels attached to packages provided to DMH.

33.    LATITUDE's representations as to the aforementioned product were part of the transaction between DMH and LATITUDE.

34.    LATITUDE expected DMH to rely on the aforesaid representations and warranties regarding the quality and character of the product and the aforesaid representation and warranties were of the type which a buyer such as DMH, would ordinarily rely.

35.    LATITUDE did not limit or exclude express warranties by affirmation, promise, description or sample.

36.    LATITUDE breached its express warranty to sell Plaintiff, DMH, ascorbic acid as promised and DMH was damaged thereby.

37.    As a direct and proximate foreseeable result of this breach of express warranty by LATITUDE, DMH has suffered damages in the sum of $225,000.

WHEREFORE, DMH Ingredients, Inc. prays for judgment against LATITUDE, Ltd. in an amount of $225,000, plus interests and costs, and for such other and further relief as the Court may deem proper.

6

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

38.    DMH incorporates and restates herein all allegations contained herein in paragraphs 1 through 37 above.

39.    LATITUDE is a merchant with respect to the sale of ascorbic acid.

40.    LATITUDE, impliedly warranted to plaintiff, DMH, that the product sold to Plaintiff, DMH, conformed with the certificates of analysis and would be fit for the purpose for which such goods are sold and would conform to the promises or affirmations of fact that were part of the transaction between DMH and LATITUDE.

41.    The implied warranty of merchantability was not limited or excluded by LATITUDE.

42.    LATITUDE breached the implied warranty of merchantability and DMH has been damaged thereby.

43.    As a direct and proximate foreseeable result of this breach of implied warranty of merchantability by LATITUDE, DMH has been damaged in an amount of $225,000.

WHEREFORE, DMH Ingredients, Inc. prays for judgment against LATITUDE, Ltd. in an amount of $225,000, plus interest and costs, and for such other and further relief as the Court may deem proper.

## COUNT IV
## BREACH OF IMPLIED WARRANTY
## OF FITNESS FOR A PARTICULAR PURPOSE

44.    DMH incorporates and restates herein all allegations contained herein in paragraphs 1 through 43 above.

45.    LATITUDE had reason to know the particular purpose for which the product was required by DMH.

46.    LATITUDE also had reason to know that DMH was relying on the defendant's skill to furnish suitable ascorbic acid.

47.    The implied warranty of fitness for a particular purpose has not been limited or excluded by LATITUDE.

48.    LATITUDE breached the implied warranty of fitness for a particular purpose and DMH has been damaged thereby.

49.    As a direct and proximate foreseeable result of this breach of the implied warranty of fitness for a particular purpose by LATITUDE, DMH has suffered damages of $225,000.

WHEREFORE, DMH Ingredients, Inc. prays for judgment against LATITUDE, Ltd. in an amount of $225,000, plus interest and costs, and for such other and further relief as the Court may deem proper.

## JURY DEMANDED

50.    DMH Ingredients, Inc. demands a trial by jury.

Dated: November 26, 2008                Respectfully submitted,

DMH Ingredients, Inc.

By: /s/Marcia G. Cotler
      One of its attorneys

Daniel S. Kaplan (ARDC No. 6204533)
dkaplan@kaplangreenswag.com
Marcia G. Cotler (ARDC No. 6201178)
mcotler@kaplangreenswag.com
Kaplan & Greenswag LLC
181 Waukegan Road Suite 205
Northfield, IL 60093
Ph:   (847) 501-5300
Fax: (847) 501-5325

# EXHIBIT A

# PURCHASE ORDER



**DMH Ingredients, Inc.**
**1228 American Way**
**Libertyville, IL 60048**
**Phone: (847) 362-9977**
**Fax: (847) 362-9988**

P.O. Number: 15286
Order Date: 3/3/2005
Vendor: LATIT
Page No.: 1

Vendor: LATITUDE
20 CROSSWAYS PARK NORTH
WOODBURY, NY 11797

Ship To: DMH INGREDIENTS, INC.
1228 AMERICAN WAY
LIBERTYVILLE, IL 60048

*941-360-0404*

Phone: 5168024200     Fax: 5168024204

| Order Date 3/3/2005 | Ship/Delivered/P.U. Date 3/4/2005 | Ship Via | F.O.B. Delivered | Terms NET 30 |
|---|---|---|---|---|

| Item No | Description | Req Date | Quantity Ordered | U/M | Unit Price | Extended |
|---|---|---|---|---|---|---|
| ASC-001-25 | ASCORBIC ACID | 3/4/2005 | 5,000.0000 | KG | 4.1500 | 20,750.0000 |



MAR 0 3 2005
BY

**Certificate of Analysis is required on all orders**

Sub-Total
20,750.0000

Order Total
20,750.0000

Authorized Signature

# EXHIBIT B

# Certificate of Analysis

Product: Ascorbic Acid                    Analysis standard: BP2000/USP24

Batch No.: 04042028                       Quantity: 1800kgs

Manufacturing Date: APR.,2004      EXP Date: MAR.,2006

| Item | Analysis    Standard | | Result |
|------|----------|---------|--------|
| Characteristics | White crystalline powder | | Pass |
| Identification | Positive Reaction | Positive Reaction | Pass |
| Melting Point | ≈190°C | | 191.0°C |
| pH | 2.1~2.6 | | 2.4 |
| Clarity of Solution | Pass | | Pass |
| Color of Solution | ≤BY$_7$ | | <BY$_7$ |
| Copper Salt | ≤5ppM | | <5ppM |
| Heavy Metal | ≤10ppM | ≤20ppM | <3ppM |
| Ferrite | ≤2ppM | | <2ppM |
| Oxalate | ≤0.2% | | <0.2% |
| Sulfated Ash | ≤0.1% | ≤0.1% | 0.02% |
| Specific Rotation | +20.5°~+21.5° | +20.5°~+21.5° | +21.1° |
| Assay | 99.0~100.5% | 99.0~100.5% | 99.84% |
| Organic Volatile Impurities | | Pass | Pass |

Conclusion: The above product complies with BP2000/USP24

Manufacturer: Weisheng Pharmaceutical(Shijiazhuang)Co., Ltd

维生商业（石家庄）有限公司
WEI SHENG PHARMACEUTICAL
(SHIJIAZHUANG) CO.,LTD.
陶 援 宪
GENERAL MANAGER

# Certificate of Analysis

Product: Ascorbic Acid      Analysis standard: BP2000/USP24

Batch No.: 04042046

Quantity: 1800kgs

Manufacturing Date: APR.,2004      EXP Date: MAR.,2006

| Item | Analysis | Standard | Result |
|------|----------|----------|--------|
| Characteristics | White crystalline powder | | Pass |
| Identification | Positive Reaction | Positive Reaction | Pass |
| Melting Point | $\approx 190°C$ | | $191.0°C$ |
| pH | $2.1 \sim 2.6$ | | 2.4 |
| Clarity of Solution | Pass | | Pass |
| Color of Solution | $\leq BY_7$ | | $< BY_7$ |
| Copper Salt | $\leq 5ppM$ | | $<5ppM$ |
| Heavy Metal | $\leq 10ppM$ | $\leq 20ppM$ | $<3ppM$ |
| Ferrite | $\leq 2ppM$ | | $<2ppM$ |
| Oxalate | $\leq 0.2\%$ | | $<0.2\%$ |
| Sulfated Ash | $\leq 0.1\%$ | $\leq 0.1\%$ | $0.01\%$ |
| Specific Rotation | $+20.5° \sim +21.5°$ | $+20.5° \sim +21.5°$ | $+21.1°$ |
| Assay | $99.0 \sim 100.5\%$ | $99.0 \sim 100.5\%$ | $99.78\%$ |
| Organic Volatile Impurities | | Pass | Pass |

Conclusion: The above product complies with BP2000/USP24

Manufacturer: Weisheng Pharmaceutical(Shijiazhuang)Co., Ltd

维生药业（石家庄）有限公司
WEI SHENG PHARMACEUTICAL
(SHIJIAZHUANG) CO., LTD.
冯 进 英
GENERAL MANAGER

03/07/2005 12:08 FAX 19413600404 ☒002

JUN-25-2004 14:48 FROM:WEISHENG      0000000000000      TO:7322355578      P.001

# Certificate of Analysis

**Product:** Ascorbic Acid    **Analysis standard:** BP2000/USP24

**Batch No.:** 04042059    **Quantity:** 900kgs

**Manufacturing Date:** APR.,2004    **EXP Date:** MAY,2006

| Item | Analysis | Standard | Result |
|---|---|---|---|
| Characteristics | White crystalline powder | | Pass |
| Identification | Positive Reaction | Positive Reaction | Pass |
| Melting Point | $\approx 190\,^\circ C$ | | $191.0\,^\circ C$ |
| pH | 2.1~2.6 | | 2.4 |
| Clarity of Solution | Pass | | Pass |
| Color of Solution | $\leqslant BY_7$ | | $< BY_7$ |
| Copper Salt | $\leqslant 5ppM$ | | $< 5ppM$ |
| Heavy Metal | $\leqslant 10ppM$ | $\leqslant 20ppM$ | $< 3ppM$ |
| Ferrite | $\leqslant 2ppM$ | | $< 2ppM$ |
| Oxalate | $\leqslant 0.2\%$ | | $< 0.2\%$ |
| Sulfated Ash | $\leqslant 0.1\%$ | $\leqslant 0.1\%$ | 0.01% |
| Specific Rotation | $+20.5\,^\circ \sim +21.5\,^\circ$ | $+20.5\,^\circ \sim +21.5\,^\circ$ | $+21.2\,^\circ$ |
| Assay | 99.0~100.5% | 99.0~100.5% | 99.78% |
| Organic Volatile Impurities | | Pass | Pass |

**Conclusion:** The above product complies with BP2000/USP24

Manufacturer: Weisheng Pharmaceutical(Shijiazhuang)Co., Ltd.

维生药业（石家庄）有限公司
WEI SHENG PHARMACEUTICAL
(SHIJIAZHUANG) CO., LTD.
冯 源 英
GENERAL MANAGER

03/07/2005 08:40 FAX

→ JOANN      ☒001/003

03/07/2005 12:08 FAX 19413600404                                                             @005

JUN-25-2004 14:49 FROM:WEISHENG              0000000000000      TO:7322395678         P.013

# Certificate of Analysis

Product: Ascorbic Acid            Analysis standard: BP2000/USP24

Batch No.: 04065274               Quantity: 1800kgs

Manufacturing Date: JUNE.,2004    EXP Date: MAY.,2006

| Item | Analysis Standard | | Result |
|---|---|---|---|
| Characteristics | White crystalline powder | | Pass |
| Identification | Positive Reaction | Positive Reaction | Pass |
| Melting Point | ≈190°C | | 191.0°C |
| pH | 2.1~2.6 | | 2.4 |
| Clarity of Solution | Pass | | Pass |
| Color of Solution | ≤BY$_7$ | | <BY$_7$ |
| Copper Salt | ≤5ppM | | <5ppM |
| Heavy Metal | ≤10ppM | ≤20ppM | <5ppM |
| Ferrite | ≤2ppM | | <2ppM |
| Oxalate | ≤0.2% | | <0.2% |
| Sulfated Ash | ≤0.1% | ≤0.1% | 0.05% |
| Specific Rotation | +20.5°~+21.5° | +20.5°~+21.5° | +21.2° |
| Assay | 99.0~100.5% | 99.0~100.5% | 99.86% |
| Organic Volatile Impurities | | Pass | Pass |

Conclusion: The above product complies with BP2000/USP24

Manufacturer: Weisheng Pharmaceutical(Shijiazhuang)Co., Ltd



WEI SHENG PHARMACEUTICAL
(SHIJIAZHUANG) CO., LTD.
GENERAL MANAGER

002/003                     → JOANN                     08/07/2005 09:40 FAX

# EXHIBIT C

Latitude, LTD.

20 Crossways Park North
Woodbury, NY 11797

PAID

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/7/2005 | 1166 |

| Bill To | Ship To |
|---------|---------|
| DMH INGREDIENTS INC.<br>1228 AMERICAN WAY<br>LIBERTYVILLE, IL  60048 | DMH INGREDIENTS INC.<br>1228 AMERICAN WAY<br>LIBERTYVILLE, IL  60048 |

| S.O. No. | P.O. No. | Terms | Project |
|----------|----------|-------|---------|
| 149 | 15286 | NET 30 | |

| Item | Description | Ordered | Prev. Invoiced | Invoiced | Rate | Amount |
|------|-------------|---------|----------------|----------|------|--------|
| ASCORBIC | ASCORBIC ACID | 5000 | 0 | 5,000 | 4.15 | 20,750.00 |

PLEASE REMIT TO ABOVE ADDRESS

| | |
|---|---|
| **Total** | $20,750.00 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $20,750.00 |

# EXHIBIT D

**DMH Ingredients, Inc.**
1278 American Way
Libertyville, IL 60048
Phone: (847) 362-9977
Fax:(847) 362-9988


# DMH
# Ingredients
INC.

# Invoice

INVOICE NO.
**18677**
DATE
**04/13/05**

REMIT PAYMENT TO:
DMH Ingredients, Inc.
1412 Momentum Place
Chicago, IL 60689-5311

PAID
MAY 18 05

BILL TO:
GOLDEN GATE BEVERAGES INC.
P.O. BOX 160608
SACRAMENTO, CA  95816-060

SHIP TO:
GOLDEN GATE BEVEAGE
2660 INDUSTRIAL BLVD.
WEST SACRAMENTO, CA  95691

| SHIP DATE | ORDER NO. | SHIP VIA | FOB | TERMS |
|-----------|-----------|----------|-----|-------|
| 4/13/2005 | 23404 | BIG DOG | PREPAID | |
| **BUYER** | **SALES REP** | **P.O. NO.** | **CUSTOMER ID** | **DUE DATE** |
| TOM | IRA KOPIN | 4500000134 | GOLDG | |

| ITEM | DESCRIPTION | QTY ORDERED | | QTY SHIPPED | | Unit Price | AMOUNT |
|------|-------------|-------------|---|-------------|---|------------|--------|
| CITRIC-CH | CITRIC ACID CHINESE | 11,000.00 | LB | 11,000.0000 LB | | 0.58 LB | 6,380.00 |
| SOD-SODBENZ | SODIUM BENZOATE (E.D.F.) | 5,015.37 | LB | 5,015.3700 LB | | 1.35 LB | 6,770.75 |
| ASC-001-25 | ASCORBIC ACID | 330.69 | LB | 330.6900 LB | | 2.75 LB | 909.40 |
| SOD-CITRATE | SODIUM CITRATE-CHINESE | 3,000.00 | LB | 3,000.0000 LB | | 0.65 LB | 1,950.00 |
| PALLET | PALLET | 9.00 | EACH | 9.0000 EAC | | 7.00 EACH | 63.00 |
| | | | | | | | |
| | Lot Number | Quantity | Unit | | | | |
| | ---------- | -------- | ---- | | | | |
| | AX5-0501-146 | 11,000.000 | LB | | | | |
| | 1121840602 | 3,196.670 | LB | | | | |
| | 1121850104 | 1,212.530 | LB | | | | |
| | 1121850104 | 606.170 | LB | | | | |
| | 4042059 | 330.690 | LB | | | | |
| | SX5-0411-010 | 3,000.000 | LB | | | | |

|  |  |
|--|--|
| Subtotal: | 16,073.15 |
| Freight | 0.00 |
| Total: | 16,073.15 |

# EXHIBIT E

# Sold Lot Number Report

by: Lot Number / Customer

| Item Key | Lot Number | Sold Qty | Return Qty Cust | Sold Date | Document No | Orig Tran ID |
|---|---|---|---|---|---|---|
| ASC-001-25 | 4042059 | 771.6100 | 0.0000 BERNA | 4/1/2005 | 18615 | 12991  3  1 |
| Lot Number: 4042059 | | 771.6100 | 0.0000 | | | |
| ASC-001-25 | 4042059 | 275.5700 | 0.0000 ENREC | 4/6/2005 | 18617 | 13003  2  2 |
| Lot Number: 4042059 | | 275.5700 | 0.0000 | | | |
| ASC-001-25 | 4042059 | 330.6900 | 0.0000 GOLDG | 4/13/2005 | 18677 | 13124  5  5 |
| Lot Number: 4042059 | | 330.6900 | 0.0000 | | | |
| ASC-001-25 | 4042059 | 220.4600 | 0.0000 NORTH | 4/5/2005 | 18629 | 13015  4  3 |
| Lot Number: 4042059 | | 220.4600 | 0.0000 | | | |
| ASC-001-25 | 4042059 | 220.4600 | 0.0000 PINNA | 4/6/2005 | 18619 | 13005  4  2 |
| Lot Number: 4042059 | | 220.4600 | 0.0000 | | | |
| ASC-001-25 | 4042059 | 110.2300 | 0.0000 SWANE | 4/27/2005 | 18813 | 13400  5  4 |
| Lot Number: 4042059 | | 110.2300 | 0.0000 | | | |
| ASC-001-25 | 4042059 | 55.1150 | 0.0000 UNIVE | 4/12/2005 | 18730 | 13233  1  1 |
| Lot Number: 4042059 | | 55.1150 | 0.0000 | | | |
| | Report Total: | 1,984.1350 | 0.0000 | | | |

# EXHIBIT F

JOHN E. FISCHER, SBN 065792
MURPHY AUSTIN ADAMS SCHOENFELD LLP
304 "S" Street (95811-6906)
Post Office Box 1319
Sacramento, California 95812-1319
Telephone:    (916) 446-2300
Facsimile:     (916) 503-4000
Email:         jfischer@murphyaustin.com

Attorneys for Plaintiff
GOLDEN GATE BEVERAGE COMPANY, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLDEN GATE BEVERAGE COMPANY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>DMH INGREDIENTS, INC.,<br><br>Defendant. | Case No.<br><br>**COMPLAINT**<br>**[DEMAND FOR JURY TRIAL]** |

Plaintiff, for its Complaint against Defendant, states as follows:

### PARTIES

1.    Plaintiff, GOLDEN GATE BEVERAGE COMPANY, INC., ("GOLDEN GATE"), is a producer of soft drinks for overseas markets and is located at 1355 Halyard Drive, Suite 180, West Sacramento, California.

2.    Defendant, DMH INGREDIENTS, INC., ("DMH"), is a provider of ingredients for food and pharmaceutical industries and is located at 1228 American Way, Libertyville, Illinois.

### JURISDICTION AND VENUE

3.    Jurisdiction is proper pursuant to 28 USC section 1332 (a), based upon diversity of citizenship of the parties.

- 1 -

79.003-492294.1

MURPHY AUSTIN ADAMS SCHOENFELD LLP
Attorneys At Law

4.      Plaintiff and Defendant are citizens of different states. Plaintiff is a citizen of the State of California and Defendant is a citizen of the State of Illinois.

5.      The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6.      Venue is proper pursuant to 28 USC section 1391(a) as Defendant resides in the forum district, regularly does business here and a substantiatial part of the events or omissions giving rise to the claim occurred in this forum district.

FACTUAL BACKGROUND

7.      On or about January 28, 2005, Plaintiff received from Defendant Specification Sheets for several compounds including Ascorbic Acid. The Specification Sheet for Ascorbic Acid contained numerous representations with respect to the Ascorbic Acid Defendant offered to sell to Plaintiff. A true and correct copy of the Specification Sheet provided by Defendant to Plaintiff is attached hereto and incorporated herein as **Exhibit "A."** At the time Defendant provided the Specification Sheet to Plaintiff, Defendant was aware that Plaintiff was in the business of manufacturing soft drinks for overseas markets.

8.      After receiving the Specification Sheet, Plaintiff qualified Defendant as a supplier for Ascorbic Acid. Subsequently, on or about April 6, 2005, Plaintiff ordered, pursuant to Purchase Order No. 4500000134, certain products from Defendant including 300 pounds of Ascorbic Acid. A true and correct copy of the Purchase Order is attached hereto and incorporated herein as **Exhibit "B."**

9.      On or about April 13, 2005, pursuant to Invoice No. 18677, Defendant shipped to Plaintiff products including 330.69 pounds of Ascorbic Acid from Lot No. 4042059. A true and correct copy of Invoice No. 18677 is attached hereto and incorporated herein as **Exhibit "C."** Accompanying Invoice 18677 and the product was a Certificate of Analysis for Lot No. 4042059 confirming that the Ascorbic Acid complied with the specifications in the Specification Sheet previously provided to Plaintiff by Defendant. A true and correct copy of the Certificate of Analysis is attached hereto and incorporated herein as **Exhibit "D."**

10.     Plaintiff incorporated Ascorbic Acid obtained from Defendant into soft drinks which were produced for a customer in Japan. The subject Ascorbic Acid was utilized to produce

- 2 -

79.003-492294.1

MURPHY AUSTIN ADAMS SCHOENFELD LLP
ATTORNEYS AT LAW

12,799 cartons of a product known as Lemon-Lemon Soda and 6,641 cartons of a product known as Orange Soda. When approximately 90 percent of these soft drinks had been shipped, Plaintiff's Japanese customer notified Plaintiff that its testing determined the soft drinks did not meet the specified requirements for Ascorbic Acid content. The testing done by Plaintiff's Japanese customer determined that the product shipped in Lot 4042059 was not Ascorbic Acid but rather Erythorbic Acid. As a result, Plaintiff's Japanese customer put the entire order on hold.

11.    Plaintiff notified Defendant of the findings of its Japanese customer. Defendant was able to obtain some of the purported Ascorbic Acid from Lot No. 4042059 from another one of Defendant's customers. Defendant had that sample tested and the test confirmed that the product was Erythorbic Acid and not Ascorbic Acid.

12.    Based upon all the test results, Plaintiff's Japanese customer deemed the soft drinks unacceptable and Plaintiff was obligated to accept them for return and refund the purchase price as well as shipping charges, fees and taxes for import and export and to incur the cost of shipping the soft drinks back to the United States, testing the soft drinks, storing the soft drinks, and destruction of some of the soft drinks. In addition, Plaintiff's Japanese customer ceased its recurring orders and did not purchase any additional soft drinks until approximately mid April 2006, thereby causing Plaintiff to lose sales to that customer for approximately six months.

13.    All conditions precedent to Defendant's obligation to perform pursuant to the purchase order for the product have been satisfied by Plaintiff or have been waived by Defendant.

14.    At all relevant times, Plaintiff lacked prior knowledge of the true nature of the product represented by Defendant as Ascorbic Acid based upon Defendant's assurances in the form of its Specification Sheet and Certificate of Analysis that the product was in fact Ascorbic Acid.

## COUNT ONE – BREACH OF CONTRACT

15.    Plaintiff incorporates and restates herein the allegations contained in Paragraphs 1 through 14 above.

16.    Defendant entered into a contract with Plaintiff, as is evidence by Purchase Order 4500000134, the Specification Sheet, Invoice No. 18677, and the Certificate of Analysis, to

79.003-492294.1

MURPHY AUSTIN ADAMS SCHOENFELD LLP
ATTORNEYS AT LAW

1  provide Plaintiff with Ascorbic Acid.

2      17.    Defendant breached the express terms of the contract by failing to provide a

3  product that met the specifications set forth in the Specification Sheet and Certificate of Analysis

4  provided by Defendant and the Purchase Order submitted by Plaintiff.

5      18.    As a direct and proximate foreseeable result of the breach of contract by

6  Defendant, Plaintiff has incurred damages in excess of $75,000.00 the exact amount of which has

7  yet to be ascertained, exclusive of costs and interests, in the form of among other things,

8  manufacturing costs, shipping costs, shipping fees and taxes, testing costs, destruction costs,

9  storage costs, lost sales and lost profits.

10            <u>COUNT TWO – BREACH OF EXPRESS WARRANTY</u>

11     19.    Plaintiff incorporates and restates herein the allegations contained in Paragraphs 1

12 through 18 above.

13     20.    At all times Defendant represented and warranted to Plaintiff that the Ascorbic

14 Acid met the specifications in the Specification Sheet previously provided to Plaintiff.

15     21.    Defendant's representations as to the aforementioned quality of the product were

16 part of the transaction between Plaintiff and Defendant.

17     22.    Defendant expected Plaintiff to rely on the aforesaid representations and

18 warranties regarding the quality and character of the product and the aforesaid representation and

19 warranties were of the type upon which a buyer such as Plaintiff would ordinarily rely.

20     23.    Defendant did not limit or exclude express warranties by affirmation, promise,

21 description or sample.

22     24.    Defendant breached its express warranty to sell Plaintiff Ascorbic Acid as

23 promised and Plaintiff was damaged thereby.

24     25.    As a direct proximate and foreseeable result of this breach of express warranty by

25 Defendant, Plaintiff has incurred damages in excess of $75,000.00 the exact amount of which has

26 yet to be ascertained, exclusive of costs and interests, in the form of among other things,

27 manufacturing costs, shipping costs, shipping fees and taxes, testing costs, destruction costs,

28 storage costs, lost sales and lost profits.

- 4 -                                                      79.003-492294.1

MURPHY AUSTIN ADAMS SCHOENFELD LLP
ATTORNEYS AT LAW

MURPHY AUSTIN ADAMS SCHOENFELD LLP
ATTORNEYS AT LAW

COUNT THREE – BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY

26.    Plaintiff incorporates and restates herein the allegations contained in Paragraphs 1 through 25 above.

27.    Defendant is a merchant with respect to the sale of the Ascorbic Acid.

28.    Defendant impliedly warranted to Plaintiff that the product sold to Plaintiff met the Specifications in the Specification Sheet and would be fit for the purpose for which such goods are sold and would conform to the promises or affirmations of fact that were part of the transaction between Plaintiff and Defendant.

29.    The implied warranty of merchantability was not limited or excluded by Defendant.

30.    Defendant breached the implied warranty of merchantability and the Plaintiff has been damaged thereby.

31.    As a direct proximate and foreseeable result of this breach of implied warranty of merchantability by Defendant, Plaintiff has incurred damages in excess of $75,000.00 the exact amount of which has yet to be ascertained, exclusive of costs and interests, in the form of among other things, manufacturing costs, shipping costs, shipping fees and taxes, testing costs, destruction costs, storage costs, lost sales and lost profits.

COUNT FOUR –
BREACH OF IMPLIED WARRANTY OF FITNESS
FOR A PARTICULAR PURPOSE

32.    Plaintiff incorporates and restates herein the allegations contained in Paragraphs 1 through 31 above.

33.    At the time of contacting Defendant had reason to know the particular purpose for which the product was required by Plaintiff.

34.    At the time of contacting Defendant also had reason to know that Plaintiff was relying on the Defendant's skill to furnish suitable Ascorbic Acid.

35.    The implied warranty of fitness for a particular purpose has not been limited or excluded by Defendant.

- 5 -

79.003-492294.1

COMPLAINT
[DEMAND FOR JURY TRIAL]

36.    Defendant breached the implied warranty and fitness for a particular purpose and Plaintiff has been damaged thereby.

37.    As a direct proximate and foreseeable result of this breach of the implied warranty and fitness for a particular purpose Defendant, Plaintiff has incurred damages in excess of $75,000.00 the exact amount of which has yet to be ascertained, exclusive of costs and interests, in the form of among other things, manufacturing costs, shipping costs, shipping fees and taxes, testing costs, destruction costs, storage costs, lost sales and lost profits.

WHEREFORE, Plaintiff prays for judgment as follows:

1.    That judgment be entered against Defendant on Counts One through Four of the Complaint and damages be awarded in excess of $75,000.00 the exact amount of which has yet to be ascertained, exclusive of costs and interests, in the form of among other things, manufacturing costs, shipping costs, shipping fees and taxes, testing costs, destruction costs, storage costs, lost sales and lost profits as determined by a jury after trial;

2.    That Plaintiff be awarded its costs of suit; and

3.    All other relief the Court deems just and necessary.

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all issues in this matter.

Dated: October _18_, 2007                    MURPHY AUSTIN ADAMS SCHOENFELD LLP

By: _____
JOHN E. FISCHER
Attorneys for Plaintiff GOLDEN GATE
BEVERAGE COMPANY, INC.

MURPHY AUSTIN ADAMS SCHOENFELD LLP
ATTORNEYS AT LAW

79.003-492294.1

COMPLAINT
[DEMAND FOR JURY TRIAL]

# EXHIBIT "A"



**DMH Ingredients** INC.

www.dmhingredients.com

Quality ingredients for the
food and pharmaceutical industries

# ASCORBIC ACID USP-80 MESH
## Product Specifications

**SPECIFICATIONS:**

Purity              99.87%
Specific Rotation   21$^0$
Residue on Ignition 0.01%
Acidity-PH          2.37
Melting Point Range 191$^0$ C.
Heavy Metals less than 3 PPM

**SOURCE:**      China

**STORAGE:**
Preserve in sealed, light-resistant containers. Avoid exposure to
moisture and excessive heat. Optimum storage at room temperature
(72 degrees F) or below.

**SHELF LIFE:**
Under optimum storage conditions, Ascorbic Acid will maintain
100% potency for a minimum of one year. Over longer periods of
time, discoloration may appear. Discoloration DOES NOT adversely
effect potency.

**GRANULATION:**
100% through an 80 mesh screen

**KOSHER:**  Yes

**FOB POINTS:**
Chicago
New York
Los Angeles

**FDA STATUS:**
Vitamin C (ascorbic acid) is generally recognized as safe (GRAS)
as a nutrient, dietary supplement and preservative (antioxidant).

1228 AMERICAN WAY • LIBERTYVILLE, IL 60048 • (847) 362-9977 • FAX (847) 362-9988
3137 HENNEPIN AVENUE • SUITE 201 • MINNEAPOLIS, MN 55408 • (612) 823-7777 • FAX (612) 823-7788

# EXHIBIT "B"

GOLDEN GATE BEVERAGE CO. INC.

# Purchase Order

Vendor: 102069
DMH INGREDIENTS
1412 MOMENTUM PLACE
CHICAGO IL 60689-5311

| Purchase Order: | 4500000134 |
| Issue Date: | 04/06/2005 |
| Payment Terms: | Within 30 days Due net |
| Ship via: | Please ship |
| Freight Terms: | |

Ship to:
WEST-SAC
WEST-SAC
2860 INDUSTRIAL BLVD.
WEST SACRAMENTO CA 95691-3825

Bill to:
GOLDEN GATE BEVERAGE COMPANY,INC.
P.O. BOX 160608
SACRAMENTO, CA 95816-0608

| Item | Material | Material Description | Need Date | Quantity/UOM |
|------|----------|---------------------|-----------|--------------|
| 00010 | 133000001 | CITRIC ACID- | | 11,000/LB |
| 00020 | 133000025 | ACESULFAME (ACE-K)- | | 441/LB |
| 00030 | 133000002 | SODIUM BENZOATE- | | 5,000/LB |
| 00040 | 133000015 | ASCORBIC ACID VITAMIN C | | 300/LB |
| 00050 | 133000010 | SODIUM CITRATE - | | 3,000/LB |

Header Notes:

AUTHORIZED SIGNATURE

_____

Buyer: _____

Approval: _____

# EXHIBIT "C"

**DMH Ingredients, Inc.**
1228 American Way
Libertyville, IL 60048
Phone: (847) 362-9977
Fax:(847) 362-9988



**DMH Ingredients**

APR 1 8 REC'D

# Invoice

INVOICE NO.
18677
DATE
04/13/D5

**REMIT PAYMENT TO:**
DMH Ingredients, Inc.
1412 Momentum Place
Chicago, IL 60689-5311

**BILL TO:**
GOLDEN GATE BEVERAGES INC.
P.O. BOX 160608
SACRAMENTO, CA 95816-060

**SHIP TO:**
GOLDEN GATE BEVEAGE
2660 INDUSTRIAL BLVD.
WEST SACRAMENTO, CA 95691

| SHIP DATE | ORDER NO. | SHIP VIA | FOB | TERMS |
|---|---|---|---|---|
| 4/13/2005 | 23404 | BIG DOG | PREPAID | |
| **BUYER** | **SALES REP** | **P.O. NO.** | **CUSTOMER ID** | **DUE DATE** |
| TOM | IRA KOPIN | 4500000134 | GOLDG | |

| ITEM | DESCRIPTION | QTY ORDERED | | QTY SHIPPED | Unit Price | AMOUNT |
|---|---|---|---|---|---|---|
| CITRIC-CH | CITRIC ACID CHINESE 13 50000 1 | 11,000.00 | LB | 11,000.0000 LB | 0.58 LB | 6,380.00 |
| SOD-SODBENZ | SODIUM BENZOATE (E.D.F.) | 5,015.37 | LB | 5,015.3700 LB | 1.35 LB | 6,770.75 |
| ASC-001-25 | ASCORBIC ACID | 330.69 | LB | 330.6900 LB | 2.75 LB | 909.40 |
| SOD-CITRATE | SODIUM CITRATE-CHINESE | 3,000.00 | LB | 3,000.0000 LB | 0.65 LB | 1,950.00 |
| PALLET | PALLET | 9.00 | EACH | 9.0000 EAC | 7.00 EACH | 63.00 |
| | | | | 4au 5571358 5045 | | |
| | Lot Number | Quantity | Unit | | | |
| | AX5-0501-146 | 11,000.000 | LB | | | |
| | 1121840602 | 3,195.670 | LB | | | |
| | 1121850104 | 1,212.530 | LB | | | |
| | 1121850104 | 606.170 | LB | | | |
| | 4042059 | 330.690 | LB | | | |
| | SX5-0411-010 | 3,000.000 | LB | | | |

| | | |
|---|---|---|
| | Subtotal | 16,073.15 |
| | Freight | 0.00 |
| | Total | 16,073.15 |

# EXHIBIT "D"

# Certificate of Analysis

Product: Ascorbic Acid                Analysis standard: BP2000/USP24

Batch No.: 04042059                   Quantity: 900kgs

Manufacturing Date: APR.,2004         EXP Date: MAY.,2006

| Item | Analysis   Standard | | Result |
|------|---------------------|--|--------|
| Characteristics | White crystalline powder | | Pass |
| Identification | Positive Reaction | Positive Reaction | Pass |
| Melting Point | $\approx 190\,^{\circ}C$ | | $191.0\,^{\circ}C$ |
| pH | $2.1 \sim 2.6$ | | 2.4 |
| Clarity of Solution | Pass | | Pass |
| Color of Solution | $\leqslant BY_7$ | | $< BY_7$ |
| Copper Salt | $\leqslant 5ppM$ | | $< 5ppM$ |
| Heavy Metal | $\leqslant 10ppM$ | $\leqslant 20ppM$ | $< 3ppM$ |
| Ferrite | $\leqslant 2ppM$ | | $< 2ppM$ |
| Oxalate | $\leqslant 0.2\%$ | | $< 0.2\%$ |
| Sulfated Ash | $\leqslant 0.1\%$ | $\leqslant 0.1\%$ | 0.01% |
| Specific Rotation | $+20.5\,^{\circ} \sim +21.5\,^{\circ}$ | $+20.5\,^{\circ} \sim +21.5\,^{\circ}$ | $+21.2\,^{\circ}$ |
| Assay | $99.0 \sim 100.5\%$ | $99.0 \sim 100.5\%$ | 99.78% |
| Organic Volatile Impurities | | Pass | Pass |

Conclusion: The above product complies with BP2000/USP24

Manufacturer: Weisheng Pharmaceutical(Shijiazhuang)Co., Ltd

维生药业（石家庄）有限公司
WEI SHENG PHARMACEUTICAL
(SHIJIAZHUANG) CO., LTD.
马 振 洪
GENERAL MANAGER

# EXHIBIT G

## Daniel S. Kaplan

**From:**   David Damlich [DDamlich@dmhingredients.com]
**Sent:**   Thursday, July 24, 2008 8:13 PM
**To:**     Daniel S. Kaplan
**Subject:** RE: DMH Ingredients, Inc. and Latitude Ltd.

You are missing a word after the parenthesis.

Do you want to correct prior to my sending to Latitude?

**From:** Daniel S. Kaplan [mailto:dkaplan@kaplangreenswag.com]
**Sent:** Thursday, July 24, 2008 4:12 PM
**To:** jstone@stonegraves.com
**Subject:** DMH Ingredients, Inc. and Latitude Ltd.

Dear Mr. Stone:

As stated in my voice mail message, I am an attorney representing DMH Ingredients, Inc. in matters related to
Latitude Ltd. I understand that you represented Latitude in an action brought by DMH in California, which was
dismissed for lack of personal jurisdiction. It is my understanding that there will be mediation in California
between Golden Gate Beverage Company, Inc. and DMH to resolve issues related to ingredients you supplied to
DMH. Please be advised that if DMH resolves the dispute with Golden Gate (through mediation or otherwise) it
will to mitigate damages resulting from the assertion that the ingredients were mislabeled. We certainly are open
to your client's participation in the mediation and you are put on notice that we will seek to recover from Latitude
any amount that DMH might have to pay in settlement, plus attorneys' fees, costs and other damages associated
with the mislabeling issue.

Please contact me to discuss the status of the litigation and mediation. Please also let me know if you no longer
represent Latitude.

Sincerely,

Daniel S. Kaplan
Kaplan & Greenswag LLC
181 Waukegan Road, Suite 205
Northfield, Illinois 60093
(847) 501-5300 (General)
(847) 501-5301 (Direct Line)
(847) 501-5325 (Facsimile)

To comply with certain U.S. Treasury regulations, we inform you that, unless expressly stated otherwise, any U.S.
Federal tax advice contained in the text of this e-mail is not intended or written to be used, and cannot be used,
by any person for the purpose of avoiding any penalties that may be imposed under the Internal Revenue Code.

CONFIDENTIAL NOTE

THIS E-MAIL TRANSMISSION AND ANY ATTACHMENTS HERETO CONTAIN INFORMATION FROM THE LAW FIRM OF KAPLAN & GREENSWAG
LLC WHICH IS CONFIDENTIAL AND PRIVILEGED. THE INFORMATION IS INTENDED FOR THE SOLE USE OF THE INDIVIDUAL OR ENTITY TO
WHOM IT IS ADDRESSED. IF YOU ARE NOT THE INTENDED RECIPIENT, YOUR USE, DISSEMINATION, FORWARDING, PRINTING OR
COPYING OF THIS INFORMATION IS PROHIBITED. IF YOU HAVE RECEIVED THIS E-MAIL IN ERROR, PLEASE NOTIFY US BY TELEPHONE
IMMEDIATELY SO THAT WE CAN ARRANGE FOR THE RETRIEVAL OF THE INFORMATION AT NO COST TO YOU.

11/19/2008

# EXHIBIT H

## Daniel S. Kaplan

**From:**    David Damlich [DDamlich@dmhingredients.com]
**Sent:**    Friday, July 25, 2008 8:23 AM
**To:**    Laurel; Dedi Avner
**Cc:**    Tom Hatch; Daniel S. Kaplan
**Subject:** Golden Gate mediation

Dear Dedi and Laurel;

Below is a copy of the correspondence sent from our Chicago attorney to your attorney in California who handled this matter.

**From:** Daniel S. Kaplan [mailto:dkaplan@kaplangreenswag.com]
**Sent:** Thursday, July 24, 2008 4:12 PM
**To:** jstone@stonegraves.com
**Subject:** DMH Ingredients, Inc. and Latitude Ltd.

Dear Mr. Stone:

As stated in my voice mail message, I am an attorney representing DMH Ingredients, Inc. in matters related to Latitude Ltd. I understand that you represented Latitude in an action brought by DMH in California, which was dismissed for lack of personal jurisdiction. It is my understanding that there will be mediation in California between Golden Gate Beverage Company, Inc. and DMH to resolve issues related to ingredients you supplied to DMH. Please be advised that if DMH resolves the dispute with Golden Gate (through mediation or otherwise) it will be to mitigate damages resulting from the assertion that the ingredients were mislabeled. We certainly are open to your client's participation in the mediation and you are put on notice that we will seek to recover from Latitude any amount that DMH might have to pay in settlement, plus attorneys' fees, costs and other damages associated with the mislabeling issue.

Please contact me to discuss the status of the litigation and mediation. Please also let me know if you no longer represent Latitude.

Sincerely,

Daniel S. Kaplan
Kaplan & Greenswag LLC
181 Waukegan Road, Suite 205
Northfield, Illinois 60093
(847) 501-5300 (General)
(847) 501-5301 (Direct Line)
(847) 501-5325 (Facsimile)


To comply with certain U.S. Treasury regulations, we inform you that, unless expressly stated otherwise, any U.S. Federal tax advice contained in the text of this e-mail is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any penalties that may be imposed under the Internal Revenue Code.

CONFIDENTIAL NOTE

THIS E-MAIL TRANSMISSION AND ANY ATTACHMENTS HERETO CONTAIN INFORMATION FROM THE LAW FIRM OF KAPLAN & GREENSWAG LLC WHICH IS CONFIDENTIAL AND PRIVILEGED. THE INFORMATION IS INTENDED FOR THE SOLE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED. IF YOU ARE NOT THE INTENDED RECIPIENT, YOUR USE, DISSEMINATION, FORWARDING, PRINTING OR COPYING OF THIS INFORMATION IS PROHIBITED. IF YOU HAVE RECEIVED THIS E-MAIL IN ERROR, PLEASE NOTIFY US BY TELEPHONE IMMEDIATELY SO THAT WE CAN ARRANGE FOR THE RETRIEVAL OF THE INFORMATION AT NO COST TO YOU.

11/19/2008

David Damlich
DMH Ingredients, Inc
1228 American Way
Libertyville, IL 60048
Office ; 847-362-9977
Fax: 847-362-9988
Cell: 847-727-2750

CONFIDENTIALITY NOTICE:
The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient,  you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

11/19/2008